DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE CAPITAL CONSULTANTS, LLC, ERISA LITIGATION | ) ) ) | MDL Docket No. 1593 |
| ELAINE L. CHAO, Secretary of the United States Department of Labor, | ) ) ) ) ) | CASE NO. 1:04-CV-35002 |
| Plaintiffs, | ) ) ) | **ORDER** |
| v. | ) ) | |
| SALVATORE J. CHILIA, *et al.*, | ) ) | |
| Defendants. | ) | |

Before the Court is Defendants International Brotherhood of Electrical Workers Local No. 38 Pension Fund and International Brotherhood of Electrical Workers Local No. 38 Health and Welfare Fund's ( the "Plans") Petition to Lift Consent Order entered by the Court on January 27, 2005. ECF No. 30.[1] The Secretary of Labor filed its opposition to which the Plans replied in support thereof. ECF Nos. 31 & 33, respectively.

Having carefully reviewed the Parties' arguments and the applicable law, the Court denies without prejudice the Plans' Petition to Lift Consent Order.

**I. Relevant Background**

The Secretary of Labor's Complaint filed on August 29, 2003, alleged that certain

---

[1] The Plans initially and erroneously filed their petition on the docket of the lead case (1:04-CV-35000). ECF No. 44. The Clerk of Court corrected this docket entry and re-docketed the petition on the correct docket, Case No. 1:04-CV-35002. ECF No. 30.

(1:04-CV-35002)

trustees of the Plans violated provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA") while acting in a fiduciary capacity of the Plans. ECF No. 1. Ultimately, the Parties negotiated an agreement. They memorialized the terms of the settlement in the signed Consent Order. ECF No. 26. The Court approved the Consent Order and entered the final Order pursuant to Rule 54(b) on January 27, 2005. ECF No. 26.

On March 30, 2010, the Plans filed a petition with the Court asking to lift or, at the very least, to modify the Consent Order. ECF Nos. 30 at 11; 33 at 9. The Plans' submitted the petition pursuant to Article XI of the Consent Order which states: "The [Plans], through their trustees, may petition the Court to modify or lift this Order for good cause shown after five (5) years from the date of its entry." ECF No. 26 at 20. The Plans argue that "[g]ood cause exists to lift the [Consent] Order because the participants and beneficiaries of the [Plans] are unduly burdened by the Order and because the [Plans] have established the necessary safeguards to protect the [Plans] and their participants and beneficiaries from the concerns that precipitated the Consent Order." ECF No. 30 at 6.

The Secretary of Labor opposes the lifting or modification of the Consent Order on the grounds that good cause is not the proper standard for lifting or modifying a consent Order, rather Rule 60(b) governs such situations, that the participants and beneficiaries of the Plans are not unduly burdened by the Consent Order and that the Plans have not met their burden of proof under the relevant portion of Rule 60(b). ECF No. 31.

(1:04-CV-35002)

## II. Rule 60(b) is the Applicable Standard of Law

The Parties dispute the threshold issue of what standard of review the Court should apply in determining whether or not to lift or modify the Consent Order. The Plans contend that the "good cause" standard agreed upon in the Consent Order should apply. The Secretary of Labor counters that, as a matter of law, Rule 60(b) is the proper standard to employ. After careful consideration of the relevant law, the Secretary of Labor's position is well taken.

The Plans argue that the Consent Order at issue should be interpreted under the same rules employed to interpret a contract and thus, the agreed upon standard of good cause applies. The Court agrees that contract interpretation is relevant, but does not, however, control all facets of a Court approved consent order. The Fourth Circuit has addressed the contract/judgment dichotomy of consent decrees as follows:

> A consent decree has elements of both judgment and contract, a dual character that "result[s] in different treatment for different purposes." *Local No. 93, Int'l Assn. of Firefighters, AFL-CIO v. Cleveland*, 478 U.S. 501, 519, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986) (describing the "hybrid nature" of consent decrees); *United States v. ITT Continental Baking Co.*, 420 U.S. 223 n. 10, 237, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975) (stating that "[c]onsent decrees and orders have attributes both of contracts and of judicial decrees") (citing *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932)). Thus, a consent decree
>> embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.
> *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (citing *Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 650-51, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961)). . . .

*Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 280 (4th Cir. 2002).

-3-

(1:04-CV-35002)

Both Parties direct the Court to *Sierra Club v. Meiburg*, 296 F.3d 1021 (11th Cir. 2002), as support for their respective contentions. The Plans argue that the following statement provides support for the argument that parties can agree upon and designate the standard of review the Court is bound to follow to modify a consent decree:

> Sierra Club contends that the modification was within the district court's discretion and points to several provisions in the decree which it says gives the district court the power to modify it. One of those provisions says that the court retains jurisdiction over the action and may issue orders to modify the terms of the decree and grant further relief as justice requires. The other says that nothing in the decree "shall be construed to limit the equitable powers of the Court to modify those terms upon a showing of good cause by any party." We do not read these boilerplate provisions as giving the district court any more power to modify the decree than it already had under Rule 60(b)(5) of the Federal Rules of Civil Procedure,FN12 as explicated by the Supreme Court in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992).

*Sierra Club*, 296 F.3d at 1032-33. The Plans argue that "[t]he fact that *Sierra Club* even considered whether the provisions were boilerplate reflects that Court's understanding that a Consent Decree can set forth a different standard for judicial review than found in Rule 60. The implication of such consideration is that non-boilerplate provisions setting forth a different standard would control." ECF No. 33 at 3.

The Plans citation, while accurate, fails to consider the remainder of that passage which the Court interprets as holding the opposite of the Plans' interpretation:

> The provisions confirm the court's authority to modify the decree, **but that authority is still subject to the constraints set out in the *Rufo* decision**. In that decision the Supreme said that the party seeking modification of a consent decree must show, first, "a significant change either in factual conditions or in law," *id.* at 384, 112 S.Ct. at 760, and, second, that "the proposed modification is suitably tailored to the changed circumstance." *Id.* at 391, 112 S.Ct. at 763.

-4-

(1:04-CV-35002)

*Sierra Club*, 296 F.3d at 1033 (Emphasis added).  In other words, even though the parties agreed upon a lessor standard of review using boilerplate language or not, a district court is still bound by the standard established in the United States Supreme Court's *Rufo* decision and the rules generally applicable to other judgments and decrees.  Thus, the dichotomy is exposed as some elements of a consent decree fall under the rubric of contract interpretation and others, such as modification of the consent decree, are governed by case law and the Federal Rules of Civil Procedure.

Moreover, the Sixth Circuit has recognized the hybrid nature of consent decrees and followed the standard established in *Rufo* to modify a consent decree:

> Under *Rufo*, "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree . . . .  The party "seeking modification of a consent decree may meet its initial burden by showing either a significant change in factual conditions or in law." . . . Modification of a consent decree is appropriate: (1) "when changed factual conditions make compliance with the decree substantially more onerous," (2) "when a decree proves to be unworkable because of unforeseen obstacles," or (3) "when enforcement of the decree without modification would be detrimental to the public interest."

*Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1018 (6th Cir.1994) (*quoting Rufo*, 502 U.S. at 384).  Modification is not available simply because "it is no longer convenient to live with the terms of a consent decree."  *Rufo*, 502 U.S. at 383.

Accordingly and based on the aforementioned well-established law, the Court finds that Rule 60(b) is the proper standard to apply to rule on the Plans' petition to modify the Consent

-5-

(1:04-CV-35002)

Order.  The Court determines whether to lift or modify the Consent Order pursuant to Rule 60(b)[2] and the criteria set forth in the above case law.

### III. <u>Analysis</u>

The Plans argue that the Court should lift or modify "the [Consent] Order because the participants and beneficiaries of the [Plans] are unduly burdened by the Order and because the [Plans] have established the necessary safeguards to protect the [Plans] and their participants and beneficiaries from the concerns that precipitated the Consent Order."  ECF No. 30 at 6.  Specifically, the Plans argue that "the additional hurdle [of requiring the Plans to engage an independent ERISA § 3(38) Investment Manager] represents an unnecessary step by which decreases the attractiveness of using mutual funds to diversify the Plans' investment portfolios by adding an additional layer of cost to the [Plans] in the form of the § 3(38) investment manager

---

[2]  Rule 60- Relief from a Judgment or Order

. . . .

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) mistake, inadvertence, surprise, or excusable neglect;
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (4) the judgment is void;
    (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
    (6) any other reason that justifies relief.

Fed.R.Civ.P. Rule 60(b).

(1:04-CV-35002)

fee." ECF No. 33 at 6. The Plans, however, do not state or estimate how much the § 3(38) investment manager's fee is in order to enable the Court to determine if these "conditions make compliance with the decree substantially more onerous" or if it is simply "no longer convenient to live with the terms of a consent decree." *Rufo*, 502 U.S. at 383-84. Additionally, the Plans do not identify their current investment manager(s) and explain why this investment manager(s) cannot recommend mutual funds in which the Plans could invest.

Nor do the Plans explain why their current Investment Monitor, Marco Consulting Group ("Marco"), who oversees the current Investment Manager(s) should wear two hats, thereby negating the protections instituted by the Consent Order. The Plans argue that Marco, the Plans' Investment Monitor, recommends investing in mutual funds, real estate equity funds, private equity fund of funds and hedge fund of funds. The Consent Order, mutually agreed upon by all parties and according to the Plans' petition, was entered into to protect the Plans and the Plans' participants and beneficiaries.

In order to prevent the problems the Plans experienced with previous investments and fiduciaries, the Consent Order established levels of protection. One of the most important protections established by the Consent Order is that an investment monitor with fiduciary responsibility to the Plans oversees investment managers with fiduciary responsibility to the Plans who choose investments for the Plans' assets. Now, the Plans ask the Court to eliminate this level of protection to allow the current investment monitor to not only monitor the investments but also to select the investments. The Secretary of Labor does not contend that such a practice violates ERISA, but argues that the Plans have not met their burden under Rule

-7-

(1:04-CV-35002)

60(b) for the Court to impose such a re-write of the Consent Order. Without the Plans establishing measurable benefits[3] evidencing changed factual conditions that make compliance with the decree substantially more onerous as a reason to lift or modify the Consent Order, the Court finds the Secretary of Labor's argument well taken.

"A party seeking to modify a consent decree has a high hurdle to clear and the wind in its face." *Sierra Club*, 296 F.3d at 1034. Other than presenting some unquantifiable burden in the form of fees placed on the Plans' participants, the Court finds that the Plans have not met their burden pursuant to Rule 60(b) and the applicable case law to persuade the Court to lift or modify the Consent Order.[4]

### IV. Conclusion

For the reasons stated above, the Plans' petition to lift or modify the Consent Order (ECF No. 30) is DENIED without prejudice.

IT IS SO ORDERED.

| | |
|---|---|
| February 9, 2011 | s/ David D. Dowd, Jr. |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

---

[3] For example, the cost of the § 3(38) investment manager's fee compared to the opportunity cost of not investing in the mutual funds, etc. Or, evidence of the level of risk of each of the proposed investments. Essentially, the Plans failed to provide the Court with enough information with which to make a sound decision to eliminate the significant protections afforded by the Consent Order.

[4] With respect to the Plans' argument that enforcement of the Consent Order without modification would be detrimental to the public interest, the Court agrees that this is an applicable factor to consider in this case. Nonetheless and for the same reasons mentioned above, the Plans have not met the high burden necessary for the Court to lift or modify the Consent Order.